The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner John A. Hedrick, the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms and adopts the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing and in a Pre-Trial Agreement as:
 STIPULATIONS
1. On 23 October 1996, the date of the injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employee-employer relationship existed between plaintiff and employer with the employer being insured by Liberty Mutual Insurance Company.
3. Plaintiffs average weekly wage was $403.00 yielding a compensation rate of $268.68.
4. On 4 November 1996, defendant-employer filed a Form 21, which was approved by the Industrial Commission on 26 February 1997. Defendants paid plaintiff temporary total disability in the amount of $268.68 per week from 30 October 1996 through 22 January 1997. On 3 February 1997, the parties entered into a Form 26 Supplemental Agreement which was approved by the Industrial Commission on 22 April 1997. Defendants paid plaintiff temporary partial disability in varying amounts per week beginning 22 January 1997; and on 15 September 1997, the parties entered into a subsequent Form 26 Agreement whereby plaintiff would receive ongoing temporary total benefits continuing as necessary. Consequently, defendants have paid plaintiff temporary total disability in the amount of $268.68 per week from 21 August 1997 through the present and continuing.
5. On 23 October 1997, plaintiffs treating physician, Dr. Westly, reviewed a written job description for an inspector which Dr. Westly for plaintiff.
6. On 28 October 1997, defendant-employer offered plaintiff a position as an inspector, but plaintiff, alleging that it was not suitable employment, declined to accept defendant-employers offer of employment.
7. Following plaintiffs refusal of the offered position, defendant filed a Form 24 on 14 November 1997 to which plaintiff filed a response on 26 November 1997.
8. On 9 April 1998, Special Deputy Ronnie Rowell held an informal hearing on the on the Form 24 and filed his decision on 20 April 1998, which neither approved nor disapproved the Form 24. The case was referred to the dockets director to be placed on the docket for hearing upon the filing of a Form 33 by defendants.
9. Defendants filed a Form 33 on 2 November 1998, and on 5 January 1999, plaintiff filed a Form 33R in response to defendants request for hearing.
10. On 6 November 1998, the case was ordered to mediation. On 27 January 1999, the parties filed a consent order to have the case removed from the mediation docket.
11. The medical records of the following physicians/medical providers were submitted to the deputy commissioner at the call of the case for hearing in an indexed packet entitled Stipulated Exhibit #1: Keystone Laboratories Inc, Memorial Mission Hospital, Robert C. Gunther, M.D., Dennis L. Martin, M.D., Stephen K. Westly, M.D., and Wendy K. Coin, M.D.
12. Answers to plaintiffs interrogatories and request for production of documents is submitted as Stipulated Exhibit #2.
***********
Based upon all of the competent evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was 50 years old. She completed nine years of formal education. Her employment history consisted primarily of manual work in the textile industry. Plaintiff is right handed.
2. On 23 October 1996, plaintiff was employed by defendant-employer as a "continuous sewer. While working in this position, plaintiffs hands became caught in a roller mechanism, causing crushing injuries to both of her hands. Plaintiffs injuries required surgical treatment.
3. Plaintiffs injuries reached maximum medical improvement on 5 September 1997.
4. Dr. Westly provided the majority of the treatment for plaintiffs injuries and monitored her attempts to return to work. On 5 September 1997, Dr. Westly restricted plaintiff from prolonged or regular work activity requiring forceful (greater than 25 lbs.) or highly repetitious pinching, twisting or gripping activity with either hand. He permitted her to perform light work that did not require her to use her hands strenuously or continuously.
5. After Dr. Westly released plaintiff to return to work as an inspector or service utility person, defendant-employer offered plaintiff employment in that position. The position defendant-employer offered plaintiff was not modified to accommodate plaintiffs physical restrictions. Defendant-employer regularly employed persons in the offered position. The position was generally available in the competitive employment marketplace.
6. Without attempting to perform the duties of an inspector or service utility person, plaintiff refused to accept defendant-employers offer of employment. Plaintiff declined defendant-employers offer of employment because she believed that the physical demands of the offered position exceeded her physical capability and the work restrictions imposed by Dr. Westly.
7. At the time plaintiff declined defendant-employers offer of employment, plaintiff knew that the offered position involved the use of scissors for cutting cloth, some lifting rolls of cloth and pulling cloth from rolls to thread the cloth into the machine.
8. The duties of the offered position involved lifting rolls of cloth onto a machine. The rolls of cloth weighed between 30 and 60 pounds. Once placed onto the machine, the cloth was transferred from its original roll to a new roll, allowing the employee to inspect the material for defects in dyeing, yarn and knitting. The employee was required to pull cloth from the original roll and thread it through the machine. The machine then removed the cloth from its original roll onto a new roll while the employee inspected the cloth. For each roll, the employee was required to record a five-digit lot number, a three-digit piece number, the rolls yardage and any noted defects. When certain defects were detected, the employee was required to use manual scissors to cut the cloth. The length of these cuts were between 40 and 68 inches. No roll was cut more than twice. Rolls of cloth were cut approximately 20 times per work shift. The inspector processed one roll every ten to 15 minutes.
9. After plaintiff refused the offered employment, Dr. Westly reviewed videotapes depicting the performance of the offered position and written job analyses. After reviewing these materials, Dr. Westly retracted his previous approval of plaintiffs return to work in the offered position because the duties of the position, as reflected by the videotapes and job analyses, were not suitable to plaintiffs physical capabilities.
10. The employment defendant-employer offered plaintiff on 28 October 1997 was not suitable to her physical restrictions and her refusal of the same was justified.
11. There is no evidence of record that plaintiff has regained any of her former earning capacity.
***********
The foregoing findings of fact and conclusions of law engender the following additional:
 CONCLUSIONS OF LAW
1. Plaintiff did not unjustifiably refuse suitable employment procured for her by defendants. N.C. Gen. Stat. 97-32.
2. Plaintiff is entitled to payments of total disability compensation at the rate of $268.68 per week until she returns to work or until order of the Industrial Commission allowing cessation of total disability compensation. N.C. Gen. Stat. 97-29; N.C. Gen. Stat. 97-32.1.
3. Plaintiff is entitled to payment of all medical expenses incurred for treatment of her 23 October 1996 injuries. N.C. Gen. Stat. 97-25, N.C. Gen. Stat. 97-25.1.
4. Plaintiff is entitled to be paid 8% interest on all amounts due to the plaintiff from the date of the hearing before the deputy commissioner. N.C. Gen. Stat. 97-86.2; N.C. Gen. Stat. 24-1.
5. Plaintiffs counsel is entitled to be paid $750.00 in attorneys fees for defending this appeal to the Full Commission. N.C. Gen. Stat. 97-88.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation at the rate of $268.68 per week beginning 5 September 1997 and continuing until plaintiff returns to work or until order of the Industrial Commission allowing cessation of total disability compensation.
2. Defendants shall pay all medical expenses incurred by plaintiff for treatment of her 23 October 1996 injuries.
3. A reasonable attorneys fee of 25% of the compensation due plaintiff is approved for plaintiffs attorney and shall be paid as follows: every fourth payment of temporary disability compensation due plaintiff under paragraph 1 shall be paid directly to plaintiffs attorney as an attorneys fee.
4. Defendants shall pay 8% interest to plaintiff on all amounts due plaintiff. All amounts due prior to the date of the hearing before the Deputy Commissioner shall bear interest from the date of the hearing before the Deputy Commissioner to the date paid; all other amounts shall bear interest from the date due to the date paid.
5. Defendants shall pay $750.00 to plaintiffs counsel for attorneys fees for defending the appeal to the Full Commission.
6. Defendants shall pay the costs.
This 22nd day of August 2000.
S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_______________ LAURA K. MAVRETIC COMMISSIONER
S/________________ RENÉE C. RIGGSBEE COMMISSIONER